**ANHEUSER–BUSCH, INC., Appellant and Cross-Appellee,**

v.

**BAVARIAN BREWING COMPANY, Appellee and Cross-Appellant.**

**Nos. 13363, 13364.**

United States Court of Appeals Sixth Circuit.

Feb. 26, 1959.

Edward M. Tritle, Cincinnati, Ohio; John G. Schenk of Des Jardins, Robinson, Tritle & Schenk, Cincinnati, Ohio, on the brief, Albert F. Robinson, of Des Jardins, Robinson, Tritle & Schenk, Richard W. Todd, of Dinsmore, Shohl, Dinsmore & Todd, Cincinnati, Ohio, of counsel, for Bavarian Brewing Co., Inc.

Wallace H. Martin, New York City; Taft, Stettinius & Hollister, Cincinnati, Ohio, on the brief, Walter J. Halliday, Robert Bonynge, New York City, Whitman & Williamson, New York City, Joseph J. Gravely, Dwight D. Ingamells, St. Louis, Mo., of counsel, for Anheuser-Busch, Inc.

Before ALLEN, Chief Judge, and SIMONS and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

The appeal and cross-appeal present issues in respect to the validity of a trademark claimed by the appellee under both State law and the Lanham Act, Title 15 U.S.C.A. § 1051 et seq., contentions of the appellant that the Bavarian Brewing Company's registration is invalid because of fraud upon the Patent Office in securing registration, an estoppel to enforce it, and procedural errors requiring reversal. The Court made careful findings of fact, issued a decree awarding injunction to Bavarian, and both appeal. Bavarian will be herein designated as

plaintiff and Anheuser-Busch as defendant. The pertinent facts follow.

The litigants are both brewers of beer. The plaintiff's distributing area is in southern Ohio, northern Kentucky, and southeastern Indiana. The defendant does not compete with it in that territory but contemplates doing so. The plaintiff brought suit against the defendant alleging itself to be the owner of the registered mark "Bavarian's" and of the common law trademark "Bavarian", charging the defendant with engaging in unfair competition with it, because of its use of the term "Bavarian". The defendant denied that plaintiff was entitled to relief and counterclaimed for the cancellation of the registered mark. Its principal contention is that "Bavarian" is descriptive of a type of beer and, so, is not entitled to trademark protection; that no secondary meaning therein was developed or acquired by plaintiff, that registration was obtained by fraud upon the Patent Office and should be cancelled, that Bavarian be estopped from restricting others from using the term and that its own use thereof was neither unfair nor infringing.

The Bavarian Company ever since its formation in 1938 has used the name "Bavarian" or "Bavarian's" for its product which was made in Covington, Kentucky, in a brewery which for many years prior was well known as "The Bavarian Brewery". Since 1946, Bavarian has labeled its beer with the mark "Bavarian's". It registered this mark, in pursuance of Section 2(f) of the Lanham Act. Since 1946, Bavarian has expanded its advertising to an average of $500,000.00 per year, whereas its yearly average prior to that time was about $27,000.00 annually. The defendant began selling beer in the late summer of 1955 which it labeled "Busch Bavarian", though not in competition with the plaintiff in its distribution area. Claiming ownership of the registered mark "Bavarian's" and of a common law trademark "Bavarian", the plaintiff charged that the defendant was in unfair competition with it because of its use of the term "Bavarian".

The principal defense is that the term "Bavarian" is only descriptive of a type of beer and, so, not entitled to trademark protection. The plaintiff, in response, relies upon the Lanham Act and evidence that it had developed a secondary meaning for its mark by reason of its use thereof continuously since 1946. It also claimed common law rights under State law. In the recent case of Lyon v. Quality Courts United, 6 Cir., 249 F.2d 790, we held, in a careful opinion by Circuit Judge Stewart, now Associate Justice of the Supreme Court, that the Lanham Act created Federal substantive rights. The State cases cited to us and those which have been independently discovered have not been too helpful, since they rely variously upon both State and Federal cases. It is sufficient to say that the Bavarian Company was able to satisfy the Patent Office that it had title to the marks under the law of the States which comprised its distribution area. Registration is prima-facie evidence of ownership and we must accept it, unless we find it necessary to decree the cancellation of the mark upon the ground that it was obtained by fraud, that Bavarian is not entitled to its sole use upon the principle of estoppel, or that the evidence discloses it to be a term merely descriptive without secondary meaning as to the source of the product, so labeled, in its distribution area.

It may well be conceded that the term "Bavarian", or its possessive "Bavarian's", are descriptive of a type or style of beer in other territory, and that it had such single connotation in earlier stages of the industry. This does not decide, however, whether the product of the plaintiff, by long usage and acceptance by the public in its own field, has acquired a secondary meaning indicating its source. The answer to this query is found in Section 2(f) of the Lanham Act, which allows for registration of secondary meaning marks, and provides:

"(f) Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing * * * shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration."

It is to be observed that the plaintiff has used the label "Bavarian's" for many years, more than the minimum required by the above Section, that it has done so in a brewery known as "Bavarian", that Bavarian is its distinctive corporate name, that it has expended for advertising its product, so labeled, an average of $500,000.00 per year since 1946, much of it for radio and television advertising directed at consumers in its distributing area of southern Ohio, northern Kentucky, and southeastern Indiana, and that the use of its mark is conclusive, in that there are no other brewers in its distribution area, so far as this record discloses, which have used either the term "Bavarian" or its possessive "Bavarian's" as a label or mark in its own field of commerce. To this, must be added evidence of a survey which showed that of 1161 people interviewed, 784 related the term "Bavarian" to beer made in the Cincinnati area; and that several purveyors of beer in its own field testified that to them "Bavarian" or "Bavarian's" meant the beer of the plaintiff and that when they had calls for Bavarian beer, they served plaintiff's product without customer complaint.

The defendant challenged this proof by the testimony of persons in the brewing industry to the effect that "Bavarian" meant a type or style of beer but we are mainly concerned here with what the term means to consumers of beer.

In any event, this conflict raised a fact issue at the trial. Since the trial Judge concluded that plaintiff had shown secondary meaning on the basis of substantial evidence, we may not set it aside as clearly erroneous. This is not to say, however, that in all locations, and at all times, the marks here challenged have acquired a secondary meaning that identifies the source of beer labeled "Bavarian". We deal here with a limited segment of the market. The District Judge limited the injunctional order to an area comprising southern Ohio, northern Kentucky, and southeastern Indiana.

In view of the Lanham Act, we do not undertake extended study of common law trademarks. In the somewhat related patent law, we have adhered to the principle that one royalty seems appropriate compensation for breach of monopoly, no matter upon how many bases it rests. Reo Motor Car Company v. Gear Grinding Machine Company, 6 Cir., 42 F.2d 965, 971, and our conclusion in Lyon v. Quality Courts United, 6 Cir., 249 F.2d 790, 795, that if a complaint states a substantial claim under Federal Trademark Law conferring jurisdiction upon the Federal Court it is independent of diversity of citizenship. We are of the view that the injunction herein may be valid when a secondary meaning has been acquired by the plaintiff for its product under Federal law for it is Federal law that controls, where interstate commerce is involved as it here is.

The defendant's contention is that there was fraud in the alleged affidavits used by the plaintiff, in proof of distinctiveness, or secondary meaning, because the affidavits were not signed and sworn to by the affiants before a Notary Public, contrary to what was indicated on their face, and that the affidavit of the then secretary of the plaintiff, in support of the registration, was knowingly false. But it is conceded that the contents of the affidavits are true notwithstanding the fact that the plaintiff's employee took the forms to a Notary Public who acknowledged the statements

as being "signed and sworn to before me" when, in fact, they were not. The defendant relies upon State ex rel. Ross v. King, Ohio Com.Pl., 129 N.E.2d 103, a case in the Ohio Court of Common Pleas. This case is distinguishable and inapplicable because requirements for registration of a trademark under the Lanham Act are governed by Federal law and the Lanham Act has no requirement as to the method of presenting evidence in support of applications for registration. Fraud is not lightly to be presumed and we agree with the trial Court that the facts do not constitute fraud. A second claim of fraud rests on proof that the plaintiff's secretary made a knowingly false affidavit to the Patent Office to the effect that no other person, firm, corporation, or association, to the best of his knowledge or belief, has the right to use a *trademark* in commerce which may lawfully be regulated by Congress, either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive, when he knew that the Mount Carbon Brewery of Pottsville, Pa., used the label "Bavarian Style Premium Beer". We believe it to be a fair inference from the evidence that plaintiff's secretary swore to the Patent Office that no one else uses the term "Bavarian" as a mark. The conclusion of the trial Court that defendant had not sustained its burden of proof of fraud is based upon a reasonable view of the evidence. Whatever may have been the circumstances in which Mount Carbon Brewery used the Bavarian label, it has no bearing upon the existence or absence of a secondary meaning in the limited market area of the plaintiff.

■ The contention of the defendant that the plaintiff is estopped from restraining the use of the term "Bavarian" is that the plaintiff convinced the Patent Office that the term "Bavarian's" sufficiently differed from the term "Bavarian" which the Patent Office, on application based upon pre-Lanham Act statutes, had refused to register. The possessive form, in view of the corporate history of the plaintiff, is more persuasive

indication of identity than description when the Lanham Act definition of trademark is kept in mind. Section 45 of the Act provides that a trademark, symbol or device, or any combination thereof, adopted or used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others will support registration. It is true that the plaintiff did from 1938 to 1946 label some of its draft beer "Bavarian Type Draft Beer." The evidence is that such use was so slight as to be unimportant. Rights under Section 2(f) of the Lanham Act could be acquired since 1946, and the conclusion that such rights had been acquired by the plaintiff since 1946 is inescapable. There is substantial evidence that in the plaintiff's distributing area "Bavarian" or "Bavarian's" is distinctive of plaintiff's product. The rights acquired under the Act by registration of the mark, by Sections 32 and 33 of Title 6 of the Lanham Act, dealing with remedies, provide in Subsection (1) that any person who uses any representation, counterfeit, copy, or colorable imitation of any registration mark in connection with sale or offering for sale, or advertising, of any goods or services, on or in connection with such use, is likely to cause confusion or mistake, or to deceive purchasers as to the source or origin of such goods or services, shall be liable in a civil action by the registrant for any of the remedies in the Act provided. Sec. 33 (b) (4) provides that the use of a term or device which is descriptive of, and used fairly and in good faith only to describe to the users the goods or services of such party or their geographic origin shall be conclusive evidence of the registrant's right to use the registered mark in commerce.

■ The Lanham Act creating rights acquired by secondary meaning marks appears to leave a wide discretion in the courts in determining what is *fair competition*. In areas where there has been no showing that plaintiff has achieved a secondary meaning for the term "Bavarian" and so is not likely to

cause confusion, it may be used fairly by others. The remedy afforded by the trial Judge appears to be within judicial discretion. With regard to registered secondary meaning, the Act is sufficiently broad to protect a mark which had acquired a secondary meaning in the users market. The trial Court made a finding and granted a remedy, based upon distinctiveness, or secondary meaning, of the term "Bavarian" which had not gone beyond the plaintiff's distributing area. It authorized no injunction broader in scope under pre-Lanham Act cases involving the protection of trademarks into an area of prospective expansion. In the absence of such finding and in the light of the finding of fact that such secondary significance is limited to the plaintiff's trade area, the scope of the injunction is in line with the findings of fact and within a reasonable discretion allowed the courts by the Lanham Act.

The defendant finally contends that the admission of the report of a survey as evidence constituted reversible error because it constituted hearsay evidence, the persons interviewed not being made witnesses and not subject to cross examination. But this report was admitted under Statute Sec. 2317.36, Ohio Rev.Code, which provides that a written report of findings of fact prepared by an expert neither a party to the cause nor an employee of a party, nor financially interested in the result of the controversy by the cooperation of several persons acting for a common purpose shall, insofar as the same is relevant, be admissible when testified to by persons making such report or finding without calling as witnesses the persons furnishing the information, if, in the opinion of the court, no substantial injustice will be done the opposite party. An analogy to the present situation may be found in Soukoup v. Republic Steel Corporation, 78 Ohio App. 87, 66 N.E.2d 334. The statute and the Soukoup case make admissibility a matter of the trial court's discretion and rule 43 of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides that the Statute or Rules which favor the reception of the evidence governs where there is doubt and that the evidence shall be presented according to the most convenient method prescribed in any of the Statutes or Rules to which reference is made and that the competency of a witness to testify shall be determined in like manner.

We accept the fact findings of the District Judge and the conclusions of law applicable to the evidence. The decree is affirmed.