**EMRA CORPORATION, a California Corporation, Plaintiff and Counter-Defendant,**

v.

**SUPERCLIPS LTD., a Canada Corporation, and The Cutters, Inc., a Michigan Corporation, Defendants and Counter-Plaintiffs**

Dor Bar Ltd., a Canada Corporation, Tafra Enterprises, New York Ltd., a Nevada Corporation, James T. Tucker, Brian J. Tucker, Allen Cowan, Richard L. Babister, Robert A. Jones, Thomas G. Franciose, Defendants.

Civ. No. 82–74675.

United States District Court, E.D. Michigan, S.D.

March 10, 1983.

---

John A. Artz, Birmingham, Mich., for plaintiff and counter-defendant.

Richard A. Solomon, Detroit, Mich., Robert B. Pierce, Farmington Hills, Mich., for defendants and counter-plaintiffs.

## MEMORANDUM OPINION

THORNTON, District Judge.

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction pursuant to Fed.R.Civ.P. 65. This is a service mark, trade name, trademark, and trade dress infringement action brought under Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a), Section 501 of the Copyright Laws, 17 U.S.C. Section 501, and under common law principles of unfair competition, and tortious interference with business relationships.

Plaintiff Emra Corporation is a California corporation and has a principal place of business in the City of San Anselmo, State of California (Plaintiff Emra Corporation and its predecessors in interest are some-

times hereinafter referred to as "Plaintiff" or "Emra").

Defendant Superclips Ltd. is a corporation of Ontario, Canada; has a principal place of business in the City of Mississauga, Province of Ontario, Canada; and is doing business in the Eastern District of Michigan.

Defendant Dor Bar Ltd. is a corporation of Ontario, Canada; is a franchisee of Superclips Ltd.; has a principal place of business in the City of Chatham, Province of Ontario, Canada; and is doing business in the Eastern District of Michigan.

Defendant The Cutters, Inc. is a Michigan corporation; is a franchisee of Superclips Ltd. for the State of Michigan; and has a principal place of business in the City of Farmington, State of Michigan, located in the Eastern District of Michigan.

Defendant Tafra Enterprises, New York Ltd. is a Nevada corporation; is a franchisee of Superclips Ltd.; has a principal place of business in the Town of Tonawanda, State of New York; and is doing business or may be found in the Eastern District of Michigan.

Defendants James T. Tucker, Brian J. Tucker, and Allan Cowan are officers of Superclips Ltd. and are residents of Canada.

Defendants Richard L. Babister and Robert A. Jones are officers of Dor Bar Ltd. and of The Cutters, Inc.; are agents of Superclips Ltd.; and are residents of Canada.

Defendant Thomas G. Franciose is an officer of Tafra Enterprises, New York Ltd.; is an agent of Superclips Ltd.; and is a resident of Canada.

Jurisdiction and venue of this Court over the Defendants and this action has not been contested.

Emra was formed by Geoffrey Rappaport and Frank Emmett in September, 1976, in California, to operate hair care and hair cutting shops and to sell related products using the name SUPERCUTS.

Prior to the formation of Emra, Rappaport and Emmett formed a partnership in California, in October 1975, using the name SUPERCUTS.

The SUPERCUTS concept, in its inception, combined the ideas of Emmett and Rappaport which modestly revolutionized the hair cutting/hair care industry. Internally, employees were to be provided more stability, wages and benefits than Emmett and Rappaport felt existed in the industry. Externally, the shops were to offer traditional hair cutting services but with the convenience of a modern fast-service restaurant—no appointment, evening hours, "a la carte" services, twenty-minute hair cuts and low cost. The shops were to do a volume business for men, women and children. The intent of the partnership was to open as many shops as possible while maintaining quality service—"a new business in an old industry."

Emmett and Rappaport chose the name and mark SUPERCUTS and developed certain uniform functional and nonfunctional characteristics for the interior and exterior trade dress of SUPERCUTS Shops.

The Emmett-Rappaport partnership opened its first SUPERCUTS Shop in Albany, California in October, 1975, and Emra Corporation assumed responsibility for the operation of their SUPERCUTS Shops in September, 1976.

Geoffrey Rappaport is president and is in charge of advertising of Emra. Frank Emmett is secretary and chief financial officer.

Emra began franchising and licensing SUPERCUTS shops in February, 1979, either directly or through its sub-franchisor Dion Corporation.

Dion Corporation is Emra's exclusive sub-franchisor in all states of the United States with the exception of California, Washington, Oregon, Hawaii, Idaho, Montana, Wyoming, Colorado, Arizona, Utah and Nevada in which states Emra holds the exclusive right to license SUPERCUTS shops.

As of December, 1982, Emra's SUPERCUTS shops, both franchised and company-owned, aggregated between 180 and 207 (211 shops as of January 31, 1983). Of these, 117 SUPERCUTS shops are in Cali-

fornia; four are in Nevada; ten are in Arizona; six are in Oregon; nine are in Washington State; one is in Idaho; three are in Colorado; 41 are in Texas; five are in New Mexico; three are in Louisiana; two are in Oklahoma; one is in Missouri; two are in Kansas; two are in Florida; and one is in Tennessee. Between seven to nine options have been sold to open SUPERCUTS shops; six of which are in the eastern portion of the United States.

Emra plans to expand throughout the United States and Canada by 1984. The number of SUPERCUTS shops has doubled each year since the first shop opened in 1975, and Emra estimates that there will be approximately 400 shops by the end of 1983.

On May 11, 1981, Emra obtained an assignment of a Texas registration of the name SUPERCUTS from Super Cuts, Inc. in Houston, Texas. In September, 1982, Emra obtained an assignment of the United States Service Mark registration of SUPER CUTS from Super Cuts, Inc. of Washington, D.C. which had operated a barbershop by that name in the District of Columbia since 1974. This assignment was a result of cancellation proceedings instituted by Emra against the United States Service Mark registration owned by Super Cuts, Inc.

In September or October of 1979, Defendant James Tucker, moved from Ontario Province, Canada with his wife Honne Tucker, to Campbell, California outside of San Francisco, to seek employment in his field of mechanical engineering.

During the nine months subsequent to Tucker's move a series of events transpired which were responsible for the establishment of SUPERCLIPS, Ltd. Some time after his arrival in California, Tucker visited a SUPERCUTS shop. This visit left a lasting impression upon James Tucker: "It appeared to be a very thriving business and I've never seen anything like that before in my life." Hearing testimony of James Tucker, Feb. 3, 1983, at 80.

Tucker then contacted Emra, inquired about a franchise and was informed that Emra had temporarily fulfilled their needs

for expansion in California and that further developments would take place at a later date. With the idea that nothing like SUPERCUTS existed in Canada, he then put together a lengthy handwritten proposal to Emra for SUPERCUTS operations in Canada. Emra informed Tucker by letter dated February 22, 1980, that they were not considering expansion into Canada at that time.

Tucker then undertook a "marketing study" which included contacts with at least three other establishments that franchised hair care and hair cutting services. During this period Tucker photographed several SUPERCUTS shops and collected their promotional and sales receipt/guarantee ticket materials.

He also met, in Canada and California, with his brother, Defendant Brian Tucker, and his brother's accountant, Defendant Bud Cowan, to discuss establishing a chain of haircutting shops.

During this period a group of materials was compiled by the Tuckers and Cowan characterized as an "in depth look at SUPERCLIPS." The materials include a written description of "the shop" which lists numerous features identical to those of SUPERCUTS shops in existence at the time TUCKER was gathering information in California. (These features ultimately were not all adopted or implemented in actual SUPERCLIPS shops.)

A list of 29 potential names for Tucker's chain of shops was prepared by Honne Tucker which list began with "Super Cuts" and included such names as "SOOPER KUTS" "Super Clip(s)", "Super Trim", "Super Scissors", "Superb Cuts", "Supreme Cuts", and "Sooper Cutts", among others.

The Tuckers moved back to Ontario Province, Canada to open haircutting shops in June of 1980.

In July, 1980, SUPERCLIPS, Ltd., was formed and incorporated in the Province of Ontario. Beginning in August, 1980, Superclips, Ltd., and its franchises began providing hair care and haircutting services in Canada and the United States under the

trade name and service mark SUPER-CLIPS.

SUPERCLIPS, Ltd. registered its mark in Canada on May 1, 1981.

SUPERCLIPS, Ltd. currently has four franchise agreements in the United States, located in Michigan, western New York, Minnesota and Florida, as well as five in Canada. As of June, 1982, 40 SUPER-CLIPS shops exist in the United States, all within the four states mentioned.

SUPERCLIPS, Ltd. plans to expand throughout the United States and Canada, and is advertising and selling options for the same.

The United States trademark application of SUPERCLIPS, Ltd. was refused by final decision of the United States Patent and Trademark office as of January 19, 1983. The letter of refusal indicates that use of both marks [SUPERCLIPS and SUPER-CUTS] in contemporaneous commerce would be likely to cause confusion, that the services rendered under the marks are identical; and that while the marks are somewhat weak, a weak mark may be granted protection against the registration of the same or similar mark for like or closely related goods. Registration no. 1,159,574.

SUPERCLIPS, Ltd., has opposed the registration of the mark SUPERCUTS in Canada on the basis stated in the opposition application that the marks are "confusingly similar".

Defendant James Tucker has admitted that SUPERCLIPS, Ltd. copied Emra's "in-store brochure" for its promotional use with franchisees in Canada and the United States.

The individually named defendants associated with Defendants Dor Bar, Ltd., and the Cutters Inc., had knowledge of the existence and ownership of the SUPERCUTS' in-store brochure and have made use of written and pictorial material from the brochure in their advertisements and in promotion of their SUPERCLIPS shops.

Plaintiff, Emra, through its officers, first learned of Defendants' activities in March of 1982, and thereafter undertook investigations into the nature and extent of SUPER-CLIPS Ltd. and its franchise activities. Apparently at this time Emra was also pursuing acquisition of the assignment of the Washington D.C. Super Cuts mark.

Frank Emmett and Emra's corporate counsel, Terrance Murray, instructed Emra's patent and trademark attorneys in August of 1982, to institute litigation against SUPERCLIPS. No communication by Emra was made to SUPERCLIPS Ltd. with regard to ceasing infringing activities prior to the filing of this lawsuit in December of 1982.

Franchises of SUPERCLIPS, Ltd. opened shops in Minnesota, New York and Florida between August and December of 1982.

The majority of SUPERCUTS signs, while varying from location to location depending upon local law and lease agreements, display orange letters on a white background which, when allowed, is a large oval shape and sits against a blue border. The type or lettering style is distinctive and uniform throughout SUPERCUTS' signs and exterior dress and has been labeled "pump font".

All SUPERCLIPS shops, company owned and franchised, are basically uniform in outer trade dress and appearance and display the SUPERCLIPS sign in uniform type style and manner.

The SUPERCLIPS' signs displayed on SUPERCLIPS' shops have orange letters on a white background, with a type of lettering style nearly identical to that used by SUPERCUTS.

The SUPERCLIPS slogan, "super haircuts for everyone," is in smaller letters of different type style set beneath the SUPERCLIPS' name on the sign, or to the right side of the SUPERCLIPS' name.

The SUPERCUTS slogan, "We cut hair for your ego not ours", alternately appears beneath the name SUPERCUTS on the sign, or on the window in the same "pump-font" style.

The exterior window dress of SUPER-CUTS' shop windows currently displays a

large "6" with a small "$" to the upper left of the "6", displays the SUPERCUTS name above the "6" and is repeated on either side of the entrance door or on two windows.[1]

The exterior window · dress of SUPER-CLIPS' shops also displays a large "6" with a small "$" to the upper left, displays the SUPERCLIPS names above the "6", in typestyle nearly identical to that of SUPER-CUTS, and is repeated on either side of the entrance door or on two windows.

Defendants claim that plaintiff misrepresented the variety of SUPERCUTS signs when displaying to the Court at the TRO hearing a photo of one particular SUPER-CUTS shop to illustrate the similarity with a photo of defendants' SUPERCLIPS shop. However, the overall look of the exterior of a SUPERCLIPS shop is strikingly similar to that of a SUPERCUTS shop, even when the SUPERCUTS sign is varied with a blue background border.

Plaintiff has specified certain items and features which are claimed to have been designed for or created uniquely by SU-PERCUTS including benches, wicker baskets, lighting treatment, color scheme and reception desks. The Court assumes without the need to currently decide that many of these features may be functional and therefore not protectable. To the extent that features are nonfunctional and a part of plaintiff's uniform trade dress and interior and exterior identity, they are included in the protectable categories covered by this opinion. The other items and features are not covered by this opinion.

Emra has promoted and advertised SU-PERCUTS on television, radio, in newspapers and other print media. By the end of 1982, Emra had spent over $4,700,000 promoting and advertising its name and mark SUPERCUTS since 1977. An additional $1,100,000 has ·been spent in the first quarter of 1983 and Emra estimates that it will spend over $4,500,000 in 1983 for such advertising and promotion. These figures do not include amounts spent by franchises of SUPERCUTS.

Gross revenues through the end of 1982 for all sales of services, and products bearing the name and mark SUPERCUTS exceeded $49,000,000. Emra estimates that the SUPERCUTS services and products will generate an additional $75,000,000 in revenues during 1983. The royalties paid to date by franchisees for use of SUPER-CUTS' name and mark amount to approximately $5,000,000.

Emra states that over 14 million SUPER-CUTS haircuts have been purchased by the public to date, at a current rate of 790,000 haircuts a month.

Plaintiff claims that defendants' willful adoption and use of colorable imitations of Plaintiff's name and mark SUPERCUTS, and of plaintiff's trade dress, and of plaintiff's copyrighted materials, and defendants' other tortious activity are likely to cause confusion, mistake or deception among members of the public, the trade and others as to the origin of the defendants' services or as to their association or sponsorship by plaintiff.

Defendants have cross claimed that plaintiff's mark is a weak mark that has not acquired secondary meaning outside of California; that the service marks of the parties are not confusingly similar; that if the service marks of the parties are not confusingly similar, then SUPERCLIPS, Ltd. is entitled to concurrent registration on the United States Trademark Register, or; that if the service marks are confusingly similar, the weak descriptive mark of plaintiff is not eligible for service mark registration and such current registration of the mark SUPERCUTS is invalid.

Defendants also raise laches and deliberate misdescription of service mark as defenses to plaintiff's claims.

A hearing on the motion for a preliminary injunction was held February 1st through February 10th; the Court has reviewed all briefs, exhibits and, in addition

---

**1.** SUPERCUTS has recommended that new franchisees establish an $8.00 price for haircuts and where the suggestion is implemented SU-PERCUTS shops display an "8" in place of the "6".

to the above findings, makes the following findings and conclusions:

## THE LANHAM ACT

■ The legal standard governing the grant of a preliminary injunction under the Federal Trademark Act, 15 U.S.C. § 1051, *et seq.* is clear:

There must be a showing of (A) irreparable harm and (B) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642, 651 (6th Cir.1982).

■ As assignee and owner of Federal Registration No. 1,159,574, Emra is entitled under 15 U.S.C. § 1114(1) to injunctive (15 U.S.C. § 1116) and other relief (15 U.S.C. § 1117) against any unauthorized use in commerce of any reproduction, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

■ The legal standard governing the grant of injunctive relief under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976) is a showing of "likelihood of confusion." *Frisch's Restaurant, Inc. v. Elby's Big Boy,* 670 F.2d at 648.

■ Eight factors have frequently been considered as relevant to a determination of likelihood of confusion:

1. Strength of the plaintiff's mark;
2. Relatedness of the goods;
3. Similarity of the marks;
4. Evidence of actual confusion;
5. Marketing channels used;
6. Likely degree of purchaser care;
7. Defendant's intent in selecting the mark;
8. Likelihood of expansion of the product lines.

Id. at 648. As in *Frisch's,* in considering these factors the unique factual setting with which we are concerned supports a finding of likelihood of confusion.

### 1. *Strength of the Mark*

■ Four different categories of terms have been identified with respect to trademark protection. In an order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these are (1) generic, (2) descriptive, (3) suggestive and (4) arbitrary or fanciful. While the second and third categories are by no means clear and distinct, generally, a mark is descriptive if it conveys to potential consumers the characteristics, functions, qualities, ingredients, properties or uses of product or service. A suggestive mark may shed some light upon the characteristics of the goods, but so applied may involve an element of incongruity and in order to be understood as descriptive the terms must be taken in a suggestive or figurative sense with imaginative effort on the part of the observer. *Stix Products, Inc. v. United Merchants and Manufacturers, Inc.,* 295 F.Supp. 479 (S.D.N.Y.1968). A mark which is descriptive is considered "weak" and receives protection only if it acquires secondary meaning as denoting goods or services provided only by a particular producer. 15 U.S.C. § 1052, *Abercrombie and Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2nd Cir. 1976). Suggestive marks are protected without proof of secondary meaning.

Plaintiff's mark is a weak mark consisting of descriptive terms. While marks which combine descriptive words have been found to be suggestive, the mark SUPER-CUTS does not require much imaginative effort on the part of the observer in order to understand the nature of the associated services.

■ Secondary meaning was originally a trademark concept designed to limit the extent to which a manufacturer could monopolize words and symbols that are useful in describing products. The doctrine holds that a descriptive or geographical mark receives protection against copying only if

consumers have come to associate it with a particular manufacturer or source. When a mark has acquired secondary meaning, a second comer is barred from using it because such use is virtually certain to create confusion in the public mind as to the source of the product. *Perfect Fit Industries Inc. v. Acme Quilting Co.*, 618 F.2d 950 (2nd Cir.1980), cert. denied —— U.S. ——, 103 S.Ct. 73, 74 L.Ed.2d 71 (1980)

Plaintiff's mark and overall trade dress have likely established secondary meaning in areas where their services and products are sold or promoted and advertised.

Plaintiff has no SUPERCUTS shops at this time in three of the four states where defendants have opened SUPERCLIPS shops. Expenditures by SUPERCUTS for advertising and promotion in these geographic areas are apparently less than 25 per cent of the total of such expenditures.

In *Anheuser-Busch, Inc. v. Bavarian Brewing Co.*, 264 F.2d 88 (6th Cir.1959) the Court stated that in areas where there had been no showing that plaintiff had achieved secondary meaning for the term "Bavarian" and was therefore not likely to cause confusion, it may be used fairly by others. The Court acknowledged that the case did not involve findings of prospective areas of expansion, and stressed that "[t]he Lanham Act creating rights acquired by secondary meaning marks appears to leave a wide discretion in the Court in determining what is *fair competition.*" Id. at 92 (emphasis in original).

In *White Tower System v. White Castle System, Inc.*, 90 F.2d 67 (6th Cir.1937) the Court applied common law principles of unfair competition and noted that the general rule is that priority of adoption of trade name or distinctive advertising features gives exclusive right to their use. The Court then considered the appellant's claim that where a junior user had innocently built up a business in a market remote from that of the originator, he may not be restrained though his monopoly may be restricted to the territory of its use. The Court found, however, that where it appeared that the second adopter had selected

the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, or to forestall the extension of his trade or the like, the exception for the "innocent junior user" would not apply. Id. at 69; citing *United Drug Co. v. Theodore Rectanus, Co.* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), and *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916).

■ Where a showing of secondary meaning has been required Courts have considered the significance of a second user's actions or intent. Defendants' intent and conduct in this case are a pivotal factor in the Court's ruling. Where, as here, defendants' own admissions and evidence of detailed copying and appropriating are present, an inference of secondary meaning and likelihood of confusion may arise. See, *Le Sportsac, Inc. v. Dockside Research Inc.,* 478 F.Supp. 602, 609 (S.D.N.Y.1979); *Ives Laboratories, Inc. v. Darby Drug Co., Inc.* 455 F.Supp. 939, 950 (S.D.N.Y.1978), aff'd 601 F.2d 631 (2nd Cir.1979). See also, *Glamorene Products Corp. v. Boyle-Midway, Inc.* 188 U.S.P.Q. 145, 166 (S.D.N.Y.1975) (an intent to infringe by the defendants is strong evidence of likelihood of confusion).

It has also been held that where a party is developing secondary meaning in its mark, others will not be allowed to infringe such mark at least against those who appropriate it with knowledge or good reason to know of its potential in that regard, or with an intent to capitalize on its quality. *Glamorene Products Corp. v. Boyle-Midway, Inc.* 188 U.S.P.Q. at 165; *National Lampoon, Inc. v. American Broadcasting Cos. Inc.,* 376 F.Supp. 733 (S.D.N.Y.) aff'd 497 F.2d 1343 (2nd Cir.1974); 3 Callman, Unfair Competition, Trademarks and Monopolies, § 77.3 (3d Ed.1971) at 356.

■ A trademark may be protected not only in the area where it is known, but also in territories into which the mark will reach in the normal expansion of the business. See, *beef & brew Inc. v. BEEF & BREW, INC.,* 389 F.Supp 179 (D.Or.1974) and cases

cited therein, (Court found knowledge only, no appropriation, copying or pirating of the mark). As the Court in *beef & brew, Inc.* pointed out, close examination of the leading "zone of expansion" cases reveals that each rests upon a finding of secondary meaning or bad faith, or both. 389 F.Supp at 185–86.

Defendant James Tucker knowingly and intentionally copied and appropriated at least plaintiff's nonfunctional exterior decor, nearly identical typestyle and trademark and copyrighted in-store brochure for the use of defendant SUPERCLIPS, Ltd. with the intent to offer nearly identical services and to franchise SUPERCLIPS throughout the United States and Canada. This conduct was and is a clear attempt to profit at the expense of the plaintiff.

Defendant James Tucker claimed never to have seen the SUPERCUTS sign as shown in the photo presented by plaintiff at the TRO hearing before this Court. However, given the extent to which defendant Tucker photographed and visited SUPERCUTS shops while in California, the fact is not lost on this Court that a SUPERCUTS shop displaying the signage almost identical to the sign as chosen by SUPERCLIPS was located in Vallejo, California, within 60 miles of Tucker's home in Campbell, California.

It also should be noted that if a competitor uses a descriptive word in its trademark sense as a "symbol to attract public attention" and accomplishes its purpose by adopting the trademark holder's distinctive typestyle or emphasis upon the descriptive word, such use can be enjoined as trademark infringement or unfair competition. *Polo Fashions, Inc. v. Extra Spec. Prods, Inc.*, 451 F.Supp. 555, 559 (S.D.N.Y. 1978).

### 2. Relatedness of the Goods or Services

The services offered by plaintiff and defendants overlap. Although defendant offers additional hair care services to those offered by plaintiff, the services offered by SUPERCLIPS shops and SUPERCUTS shops are sufficiently related that they may be connected in the minds of prospective consumers.

### 3. Similarity of the Marks

The name SUPERCLIPS is substantially similar to plaintiff's trade and service mark, SUPERCUTS. The words sound similar, look alike in typestyle and convey the same suggestion as to services offered by both.

### 4. Evidence of Actual Confusion

Both plaintiff and defendant have introduced evidence of the existence of Nick Pantele's SUPERCUTS shop in Dearborn, Michigan whose coupons apparently were presented at a SUPERCLIPS shop in Michigan. Both defendants and plaintiff corresponded with Mr. Pantele and claimed that his use of the mark SUPERCUTS infringed their respective marks. No other evidence relating to actual confusion has been presented.

### 5. Marketing Channels Used

Both parties currently use newspaper, television and radio promotion and advertising.

### 6. Likely Degree of Purchaser Care

The "no appointment" policy for haircuts exists for both SUPERCUTS and SUPERCLIPS shops as well as the intent to provide fast service with uniform results which tends to support a finding of a casual degree of purchaser care.

### 7. & 8. Defendant's Intent in Selecting the Mark and Likelihood of Expansion of Product [and Service Lines]

As stated, this Court finds that Defendant Tucker knowingly appropriated certain nonfunctional characteristics of plaintiff's mark, trade dress and copyrighted material in an attempt to profit and derive benefit from and at the expense of the plaintiff.

This Court does not make a finding at this time of "palming off" by defendants herein, however, to establish infringement of a registered trademark it need only be

shown that an infringer used a reproduction, copy or colorable imitation of the registered mark in a way "likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods." 15 U.S.C. § 1114(1); *Statler Manufacturing Co. v. Geo. C. Knight Co.,* 228 F.2d 136, 139 (6th Cir.1955).

This Court finds it highly likely that plaintiff can establish at trial that defendants used a colorable imitation of plaintiff's mark in a way which will cause confusion, mistake and likely deceive purchasers as to the source of defendants' services or as to their association or sponsorship by plaintiff.

The case for injunctive relief before this Court requires a balancing of factors including the equitable consideration of fair competition, the intended protection of the trademark laws and the reality of the franchise system in today's marketplace.

The business of plaintiff and defendants, at least historically, is one where services are identified with an individual; a good barber or a good beautician to whom a customer returns for personal satisfaction.

The very concept of plaintiff's business is to provide guaranteed uniform quality personal hair care and haircutting services throughout its SUPERCUTS shops. The personal aspect of the service may or may not be susceptible to uniformity, but the reputation plaintiff has or is establishing is an important part of its entire identity—including its name, dress, advertising and other distinctive features.

Defendants are certainly entitled to compete in the same marketplace and offer identical services to those of plaintiff, but they may not knowingly do so at the expense of the plaintiff's efforts and protectable identity. "It is so easy for the honest businessman, who wishes to sell his goods upon their merits; to select from the entire material universe which is before him, symbols, marks and coverings which by no possibility can cause confusion." *Florence Manufacturing Co. v. J.C. Dowd & Co.,* 178 F. 73 (2nd Cir.1910).

The concern of the Court is to protect the private rights of the trademark owner and to protect the public from confusion, deception or mistake. *HMH Pub. Co. v. Brincat,* 504 F.2d 713 (9th Cir.1974).

Under the trademark laws, this Court finds that defendants' knowing and intentional appropriation and use of a confusingly similar mark and trade dress to that of plaintiff's and appropriation and use of advertising and promotional materials which display the mark SUPERCLIPS in the type style nearly identical to plaintiff's, is likely to cause confusion or mistake or to deceive purchasers as to the source or origin of defendants' and plaintiff's services and goods.

## UNFAIR COMPETITION

Plaintiff has shown a likelihood of success on the merits under common law principles of unfair competition.

Even where a defendant does not actually intend to deceive anyone his acts may constitute unfair competition if that is the ordinary and probable result of such acts. *Champion Spark Plug Co. v. Emener,* 16 F.Supp. 816 (D.C.Mich.1936).

Where strong resemblances between the name or dress of goods of a defendant appear with no sufficient reason, there is an inference that they exist to be misleading. Further, the fact that the dissimilarities are such that, if called to the attention of a purchaser, or if he were given an opportunity for comparison, he would not be deceived, is not a defense to a claim of unfair competition. *Paris Medicine Co. v. W.H. Hill Co.,* 102 F. 148 (6th Cir.1900); *Socony-Vacuum Oil Co. v. Oil City Refiners,* 136 F.2d 470 at 474.

To constitute unfair competition it is not necessary that there be a purpose to pass off one's products as those of another, it being sufficient that because of insignia or similarity of product, purchasers believe it to be the product of another, or that the insignia or symbol has a tendency to, and probably will, deceive some part of the public. *Statler Manufacturing Co. v. Geo. C. Knight,* 228 F.2d at 138.

## IRREPARABLE HARM

Plaintiff claims that its reputation is perhaps its single most important asset and injury to that reputation is likely to do serious damage to plaintiff's continued ability to operate successfully in the field. Plaintiff also claims that defendants have wrongfully adopted the imitation name and mark SUPERCLIPS for services of inferior quality, but of identical class. Plaintiff further alleges that the infringing activities of defendants will seriously disrupt plaintiff's existing and prospective franchise business relationships and the future value of Emra's existing contract with Dion Corporation to market SUPERCUTS franchises.

It is generally recognized that a business reputation developed through use of a protectable mark will be protected even though there is no actual competition between the parties. Further, where advertising and good will extend beyond the immediate selling market, this reputation will be protected even though the prior user is far removed from the market of the newcomer, and there is little likelihood of his expansion into that market. *Koffler Stores, Ltd. v. Shoppers Drug Mart, Inc.*, 434 F.Supp. 697, 702 (E.D.Mich.), aff'd 559 F.2d 1219 (6th Cir.1976).

In *Frisch's, supra,* the Court held that where a cognizable interest in protecting trademark rights had been demonstrated, and a showing of a likelihood of confusion had been made, the claimant had demonstrated the "likelihood of injury and causation" for injunctive relief under 43(a) without the need for showing an actual loss of business. 670 F.2d at 650.

Plaintiff has not shown that Emra's advertising and good will have extended into Michigan, Minnesota or western New York at this point. And while this Court finds that defendants' knowing appropriation of plaintiff's mark and trade dress presents a likelihood of confusion and entitles plaintiff to injunctive relief, this factor as well as others will determine the equitable boundaries of such relief.

## SCOPE OF RELIEF

The substantive scope of an injunction in an unfair competition case is not subject to cut and dried rules. The extent of the relief depends entirely on the circumstances of each individual case. The rule is fundamental that the injunction should not be so broad as to operate oppressively or contrary to real justice. *Socony-Vacuum Oil Co. v. Oil City Refiners,* 136 F.2d 470, 475.

Plaintiff became aware of the existence of SUPERCLIPS in March of 1982. Plaintiff claims and this Court finds that plaintiff was not aware of the extent and scope of SUPERCLIPS, Ltd.'s franchise activities until August of 1982, when Emra's officers recommended that litigation be initiated. Plaintiff filed this action in December, 1982. However, neither during the period between August and December of 1982, nor at any time, did plaintiff follow its own admittedly ordinary procedure of informing defendants that their activities were considered infringing by Emra. Between August and December of 1982 new shops were opened in the greater Detroit area. The total number of shops in this area is now 14, with two in adjacent Windsor, Ontario. One shop was opened in Minnesota in August of 1982, one in New York in September of 1982, and one in Florida, in November or December of 1982.

Given the fact that plaintiff claims knowledge of the extent of defendants' expansion, at least as of August of 1982, it is not clear to this Court why plaintiff did not then immediately notify defendants that their activities were considered to infringe Emra's rights.

Defendants claim that this inaction by plaintiff precludes plaintiff from injunctive or other relief. However, laches alone does not foreclose a plaintiff's right in an infringement action to an injunction and damages after the filing of the suit. Only by proving the elements of estoppel may a defendant defeat such prospective relief. *TWM Manufacturing Co., Inc. v. Dura Corp.,* 592 F.2d 346, 349 (6th Cir.1979).

■ In this case defendants' own conduct may defeat defendants' use at trial of the equitable defense of estoppel. However, plaintiff's complete failure to advise defendants of its opinion of the claimed infringement, knowing that defendants were actively expanding their commitments to franchises, may be considered "intentionally misleading silence"—and will effectively limit the scope of their injunctive relief.

Defendants claim that plaintiff intentionally failed to communicate their opinions in order to maximally disrupt defendants' operations of expansion. There is no evidence to support this claim or such an inference. However, at least to the extent that plaintiff's silence came at a time when plaintiff was aware that defendants were rapidly establishing a market in lower Michigan,[2] plaintiff has materially prejudiced the defendants. We also take this view as to Minnesota [3] and western New York, where the defendants' market is infantile but where plaintiff has established no shops and has shown little if any advertising and promotion of SUPERCUTS. We do not take this view as to Florida, where plaintiff's shops have opened and where advertising and promotion by plaintiff has been established.

Defendants SUPERCLIPS, Ltd. through its franchisees and defendants Dor Bar Ltd., Tafra Enterprises, Cutters, Inc., James T. Tucker, Brian J. Tucker, Allen Cowan, Richard L. Babister, Robert A. Jones, and Thomas G. Franciose, will not be enjoined from their use of the mark SUPERCLIPS or their current trade dress and nonfunctional features as used in existing shops or intended for current outstanding options in lower Michigan, Minnesota or western New York. Defendants will be required, however, to provide clear and conspicuous designations of origin on existing and currently optioned shops.

■ Defendant SUPERCLIPS, Ltd. *will not be included* in this injunction to the extent of the operation of SUPERCLIPS shops in Canada. Emra's representation to James Tucker in February of 1980 that it had no plans for expansion into Canada at that time, the May 1, 1981 Canadian registration of the mark SUPERCLIPS, and plaintiff's failure to notify defendants of perceived infringement, all raise doubts as to the likelihood of success on the merits of plaintiff's claims as to the use of the SUPERCLIPS mark in Canada.

Except for the uses as allowed and outlined above, an injunction will issue (a) for all other current and prospective use by defendants of the mark SUPERCLIPS for promoting, advertising or selling new franchises in the United States except to the extent that such promoting or advertising for the purpose of selling SUPERCLIPS franchises as allowed by this injunction, clearly and conspicuously designate the geographic limitation for such sales; (b) for the use of signage by defendants, interior and exterior, which utilizes a red/orange color on a white background in any type style or arrangement of elements similar to plaintiff's mark or type style or arrangement of elements; (c) for any signage of defendants including pricing, exterior graphics, window graphics and interior graphics which uses any type style or arrangement of elements similar to plaintiff's; (d) for the use of any of plaintiff's copyrights in any manner including printing, using or distributing brochures or other advertising or promotional materials containing or embodying any part of plaintiff's copyrighted material; (e) for the use of any promotional material derived from plaintiff's brochures or other promotional materials; (f) for any advertisements or other promotions on television or radio or in any newspaper in Canada where the market area of the television or radio broadcast

2. Five SUPERCLIPS shops existed in March of 1982, when plaintiff first learned of SUPERCLIPS, and, by December, 1982, 14 shops existed.

3. The photos of the SUPERCLIPS shop opened in Minnesota show what appears to be a great-

er use of plaintiff's color scheme of orange and blue, than those of SUPERCLIPS shops elsewhere. The current injunctive relief should leave no doubt in defendants' future franchise dealings that nonfunctional trade dress similarities to SUPERCUTS shops are prohibited.

or the newspaper circulation area includes any portion of the United States, except to the extent that such advertising and promotions clearly and conspicuously designate the geographic limitations as set forth in this injunction, and, except in Windsor (Detroit), but including Vancouver (Seattle), Toronto (Buffalo) and any other Canadian market which has similar media spillover into the United States; and (g) for otherwise competing unfairly with plaintiff.

An appropriate Order will enter.

### ORDER

This cause was heard upon Motion of plaintiff, EMRA CORPORATION, and the Court having considered plaintiff's verified Complaint as filed on December 14, 1982 and the exhibits and affidavits submitted therewith, and having heard and received oral testimony and documentary exhibits for six days in open court, and it appearing to the Court after due deliberation, that defendants' name and mark SUPERCLIPS is confusingly similar to plaintiff's name and mark SUPERCUTS, that the defendants are actually engaged in committing other acts and are about to commit other acts as set forth in plaintiff's verified Complaint, and will continue to do so unless restrained by Order of this Court, and that irreparable injury, loss, or damage will result to plaintiff before a final trial and determination take place, and further that the public interest will be best served, and the public at large will be best protected, by the granting of this Preliminary Injunction.

Defendants SUPERCLIPS, Ltd. through its franchisees and defendants Dor Bar Ltd., Tafra Enterprises, Cutters, Inc., James T. Tucker, Brian J. Tucker, Allen Cowan, Richard L. Babister, Robert A. Jones, and Thomas G. Franciose, *will not be enjoined* from their use of the mark SUPERCLIPS or their current trade dress and nonfunctional features as used in existing shops or intended for current outstanding options in lower Michigan, Minnesota or western New York. Defendants *will be required,* however, to provide clear and conspicuous designations of origin on existing and currently optioned shops.

Defendant SUPERCLIPS, Ltd. *will not be included* in this injunction to the extent of the operation of SUPERCLIPS shops in *Canada.* Emra's representation to James Tucker in February of 1980 that it had no plans for expansion into Canada at that time, the May 1, 1981 Canadian registration of the mark SUPERCLIPS, and plaintiff's failure to notify defendants of perceived infringement, all raise doubts as to the likelihood of success on the merits of plaintiff's claims as to the use of the SUPERCLIPS mark in Canada.

Except for the uses as allowed and outlined above IT IS HEREBY ORDERED, pursuant to Rule 65, F.R.Civ.P., pending the final hearing and determination of this action, that defendants, their officers, agents, servants, employees and all persons acting in privity, concert, or participation with them, including all franchisees and subfranchisees, be enjoined from:

(a) all other current and prospective use by defendants of the mark SUPERCLIPS for promoting, advertising or selling new franchises in the United States except to the extent that such promoting or advertising for the purpose of selling SUPERCLIPS franchises as allowed by this injunction, clearly and conspicuously designate the geographic limitation for such sales;

(b) the use of signage by defendants, interior and exterior, which utilizes a red/orange color on a white background in any type style or arrangement of elements similar to plaintiff's mark or type style or arrangement of elements;

(c) the use of any signage of defendants including pricing, exterior graphics, window graphics and interior graphics which uses any type style or arrangement of elements similar to plaintiff's;

(d) the use of any of plaintiff's copyrights in any manner including printing, using or distributing brochures or other advertising or promotional ma-

terials containing or embodying any part of plaintiff's copyrighted material;

(e) the use of any promotional material derived from plaintiff's brochures or other promotional materials;

(f) the use of any advertisements or other promotions on television or radio or in any newspaper in Canada where the market area of the television or radio broadcast or the newspaper circulation area includes any portion of the United States, except to the extent that such advertising and promotions clearly and conspicuously designate the geographic limitations as set forth in this injunction, and, except in Windsor (Detroit), but including Vancouver (Seattle), Toronto (Buffalo) and any other Canadian market which has similar media spillover into the United States; and

(g) otherwise competing unfairly with plaintiff.

IT IS FURTHER ORDERED that defendants obtain approval of this Court for any new tradename, service mark, or trademark selected for their operations;

IT IS FURTHER ORDERED that except for those uses designated as excluded from this Injunction, defendants shall immediately change their signage, advertising, and promotional materials in accordance with the above.

IT IS FURTHER ORDERED that this Preliminary Injunction be conditioned upon plaintiff first furnishing a bond, as security under Rule 65.1, F.R.Civ.P., in the amount of $1,500,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained, such bond to be approved by the Clerk of the Court no later than March 18, 1983.